## KANSAS CITY SOUTHERN RY. CO. v. CHANDLER.

### No. 4313.

Court of Civil Appeals of Texas. Beaumont.

Dec. 13, 1945.

Rehearing Denied Jan. 30, 1946.

Orgain, Bell & Tucker, of Beaumont, for appellant.

Adams, Hart & Daughtry, of Beaumont, for appellee.

COE, Chief Justice.

Appellee, F. H. Chandler a former employee—a switchman—of the Kansas City Southern Railway Company, brought this suit for personal injuries to himself in the 58th District Court of Jefferson County, Texas, under the Federal Employers' Liability Act, U.S.C.A., Title 45, §§ 51–60. He alleged that while in its employ in such capacity he was required to constantly get off and on the trains upon which he was working, that his employer put upon the path where he was required to alight "ballast, consisting of gravel and hard rocks of various sizes, to-wit, from two to five inches in diameter," and that in the course of his work during the said period of time from the 15th day of May, 1943, to about the 10th day of July, 1943, to-wit, on or about the 15th day of June, 1943, appellee sustained injuries in the course of his said work by stepping on or against said rocks. Trial was had to a jury and upon its verdict judgment was rendered for appellee for $20,000. Proper motion for a new trial was duly filed by appellant and overruled by the trial court. Having given notice of appeal from the action of the court in overruling its motion for a new trial, appellant has properly perfected its appeal to this court.

The appellant answered by general denial, alleging that the appellee was guilty of negligence which was the sole proximate cause of his injury, if any, or in the alternative a contributing cause to such, that appellee assumed any risk attendant from the work.

By Point of Error No. 1, appellant complains of the action of the trial court in overruling and refusing to sustain its motion for an instructed verdict on the ground that the evidence wholly failed to show that the appellant was guilty of any negligence in the placing upon or near the track and leaving there the gravel complained of.

Upon the trial, appellee testified that for a number of years he had been engaged in railroad work as a switchman for different railroad companies; that he had formerly worked for the Kansas City Southern Railway Company, and had returned to its employ on December 31, 1942, at which time he was working out of Port Arthur, Texas; that around May 14th or 15th, 1943, he started work on what is known as "4 p. m. switch engine," operating out of Beaumont; that the work on this job required continuous switching of cars of the company in the vicinity of the water tank and between Chaison Switch and Irving Street, of which area he complains in this suit; that his work required him to get off and on the sides of the cars

involving the switching movements in order to make "his cut" to permit cars to be switched, that it was necessary that he step down or jump down a distance of 24 to 30 inches from the step to the path about which he complains, that he worked upon this job for 87 nights, commencing about May 10 or 15, 1943; that his work required long hours on practically all of the nights and on numerous occasions he would work 16 hours straight, and that at least half of his work was performed in the 250 or 300 feet area between Irving Street and Chaison Switch; that in getting off and on the cars in this switching operation, pulling pins, he had to get off and on from this pathway which was covered with said rocks and in catching cars he had to run in this pathway in order to make the catches; that in March of 1943, there were no rocks in that pathway but that when he first went to work there in May it had rocks on it and that they were loose and they did not pack down, and described such rocks by stating, "From about like that up to about like that (indicating)." He further described them "as big as an ordinary soup bowl, about four or five inches through, there were lots of them like that," that it looked like it was refuse that they had sifted out of a gravel pit; that in the course of three or four days from the time he went to work that the biggest of those rocks were gone but plenty of them were left there as big (indicating) on down. When asked about how that size would compare to the size of an ordinary apple, he replied, "Well, that would about get it," and that such rocks remained there until sometime about the middle of August when they were cleaned up; that in stepping down from the cars upon said rocks he would step or jump from 24 to 30 inches, and in a majority of times the train would be moving and that he had difficulty in getting on and off on the rocks, and that about the middle of July that his feet began to bother him and that he could not tell whether it was soreness in the muscles or whether it was strain or from continued long hours; that he then went to a doctor for treatment of his feet but continued to do his work, wearing a shoe prescribed by his doctor, and that he continued to work until the latter part of August when it seemed like his feet started getting bad on him, swelling and giving him pain. He continued to work part time during the month of September and two days in Oc-

tober, as a relief switchman; that at the time he worked there in September the pathway had been cleaned up and dirt and sand and other things had been placed on it and leveled out and that the rocks were gone, and that during his last work during the first part of October his feet got so sore and swollen that he just could not go any more. Appellee also testified that before his experience in switching upon this particular job that he had never had any trouble with his feet. He further testified that when making these jumps or stepping from the cars that it did not hurt his feet so bad on account of having on heavy shoes, but that it just kept on agitating and agitating and coming up on him; that he complained to the roadmaster and yardmaster and asked them if there was some way they could do something with the rock, cover them over with something that would be suitable to work on and that Mr. Arnold told us that he would get to it as soon as he could, to give him an opportunity and he would fix it up (Mr. Arnold was the roadmaster). This was about June 1st. He also asked the section foreman, a Mr. Cooper, to remedy the condition and that he continued to work on those rocks in the belief that Mr. Arnold would carry out his promise to repair the condition, but that such repairs were not made until the latter part of August. He further testified that all the five inch rocks were removed from the pathway in two or three days after the time he went to work but that they did not do anything about the other rocks, and that they remained there until about the middle of August. The evidence further shows that of the several employees of the appellant who worked with and around the appellee, on and over the area complained of, many were still in the employ of the appellant, several of whom were located here in Beaumont. Of this number, the appellant called one witness, a Mr. Butwer, who testified that in 1942 to the latter part of 1943 he was working for the Kansas City Southern Railway Company in the Beaumont area and that when Chandler was working at Port Arthur (previous to the time he went to work in Beaumont) he complained about his feet; that witness worked upon this gravel and had no trouble; that he knew of no other person who had any foot trouble from working upon this gravel. As to the size of the gravel, witness testified that it was just

a natural gravel that you would pick up for the purpose of filling in, that it would be from the size of an egg and smaller, and like that, that it was ordinary ballast found all up and down the line, even in front of the depot, that the condition that appellee complained of was no different than it was any where up and down the line. On cross examination, he testified that the largest gravel was about the size of an egg (indicating). Appellant called a witness by the name of Owen, who testified that Chandler had complained to him of his feet hurting before he started working upon this particular job. Appellant also called one Sweet, who testified that he had never heard of anyone injuring his feet in going upon this rock or gravel, that it was just ordinary ballast, that he had worked there and had no trouble in walking upon the gravel; that there were no big rocks, just ordinary ballast.

Appellant contends that appellee's evidence failed to show any actionable negligence on the part of appellant with reference to the matters complained of and cited many authorities to support their able argument in support of this contention, among them being Doty v. Ft. Worth & D. C. Ry. Co., 127 Tex. 521, 95 S.W.2d 104; Delaware L. & W. R. Co. v. Koske, 279 U.S. 7, 49 S.Ct. 202, 73 L.Ed. 578, Toledo St. L. & W. Ry. Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 72 L.Ed. 513. These opinions by both the state Supreme Court and the Supreme Court of the United States in one way or the other support the contentions that the evidence failed to establish actionable negligence on the part of the appellant. However, each of these opinions was written before the amendment of the Federal Employers' Liability Act in 1939, which abolished the defenses of assumed risk to this character of action. In most of these cases the defense of assumed risk was urged and seems to have been applied by the courts under different names, sometimes as showing nonnegligence on the part of the railroad company and in other instances as failure to show that defendant had violated any duty owing to the plaintiff. Since the amendment of 1939 of the Act above referred to, the Supreme Court has had occasion to pass directly upon the effect to be given in cases of this kind. In Bailey v. Central Vermont Ry. Inc., 319 U.S. 350, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444, the court in discussing the propriety in instructing a verdict against the plaintiff, had this to say:

"The right to trial by jury is 'a basic and fundamental feature of our system of federal jurisprudence.' * * * It is part and parcel of the remedy afforded railroad workers under the Employers' Liability Act. Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries, * * * and to deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."

In the case of Boston & M. R. R. v. Cabana, 1 Cir., 148 F.2d 150, 152, the court announced the rules applicable to this case in the following language:

"To recover under the Federal Employers' Liability Act the plaintiff must prove that the defendant was negligent and that such negligence was a proximate cause in whole or in part of the accident. (Citing the Tiller v. Atlantic Coast Line R. Co., infra and Tennant v. Peoria & P. U. Ry. Co., infra cases.) 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of this function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' Tennant v. Peoria & P. U. Ry. Co., 321 U.S. [29], 64 S.Ct. [409], 88 L.Ed. 520. The scope of our review, therefore, is limited to the inquiry whether the plaintiff's allegation of negligence is supported by any

substantial evidence and whether the jury could reasonably infer that such negligence was the proximate cause of the accident in question:"

In Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 546, the Supreme Court of Pennsylvania held that while Blair had not assumed the risk there was no evidence to support negligence in any respect. When this case reached the Supreme Court of the United States, Justice Black takes up its consideration with this observation: "To deprive railroad 'workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.' * * * Because important rights under the Act were involved, we granted certiorari"; and in the course of his opinion, held: "We cannot say as a matter of law that the railroad complied with its duties in a reasonably careful manner under the circumstances here, nor that the conduct which the jury might have found to be negligent did not contribute to petitioner's injury 'in whole or in part.' Consequently we think the jury, and not the court should finally determine these issues."

■ In the case of Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 447, 87 L.Ed. 610, 143 A.L.R. 967, the Supreme Court had before it for review a judgment of the trial court denying any relief to Tiller on the ground that the evidence disclosed no negligence. The judgment of the trial court was affirmed by the Circuit Court of Appeals on the theory that Tiller had assumed the risk. In construing the effect of the 1939 amendment to the Federal Employers' Liability Act the court held that the amendment obliterated from the law every vestige of the doctrine of assumption of risk and did not leave open the identical defense for the master by changing its name to non-negligence, stating that that court had held in facing the hazy margin between negligence and assumption of risk as involved in the Safety Appliance Act of 1893, 45 U.S.C.A. § 1 et seq., " 'unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of risk under another name;' and no such result can be permitted here"; and further held that said amendment was clearly aimed at ending the rule announced in Toledo St. L. & W. Ry. Co. v. Allen, supra.

■ In view of the decisions of the Supreme Court of the United States construing the effect to be given to the amendment of 1939, above referred to, we can not say as a matter of law, that the railroad complied with its duty in a reasonably careful manner under the circumstances here. We therefore held that the evidence was sufficient to justify the court in submitting to the jury the issue of negligence on the part of appellant and that there was no error committed by the trial court in overruling appellant's motion for an instructed verdict on this ground.

■ By appellant's second point, it complains of the trial court in overruling its motion for an instructed verdict based upon the ground that the consequences claimed by appellee could not have been reasonably anticipated or foreseen by the appellant.

The "attendant circumstances" revealed by the record in this case is that rocks varying in size from two to five inches in diameter were placed upon the entire length of a 250 to 300 foot pathway which appellee was compelled to use in the course of his work as a switchman; that he, at least on two occasions during the 90 day period, had protested to the road superintendent relative to the condition of the pathway and that the road superintendent promised to remedy the situation but failed to do so until after plaintiff received his injuries. The failure of appellant to produce eight other employees who had worked with Chandler on this pathway, and who were still in its employ and within the jurisdiction of the trial court at the time of the trial, could be considered by the jury as supporting appellee's contention as to the condition of such pathway. Dr. Edward C. Ferguson, testifying in behalf of the appellee, stated that he had x-rayed appellee's feet and that the x-ray showed there was a short spur on the left heel and calcium deposit in the soft tissue under his shin and testified that in his opinion that appellee was suffering from bursitis; and testified at great length as to the cause and effect of that disease, testifying that there are three common causes, the chief one being trauma or injury, infection and metabolic disturbances; that appellee was not suffering from arthritis; that appellee was not physically able to do work requiring him to climb or jump on his feet or to get around and stand on his feet, and that the condition was

permanent, or would continue the rest of his life. The evidence showed that throughout the period that appellee worked upon this pathway, to-wit, 87 nights, that he would average jumping from the cars from 150 to 200 times each night. Dr. Ferguson, in answer to a hypothetical question propounded, testified that in his opinion jumping on the rocks caused the condition which he found in appellee's feet today. He further testified that in his opinion that appellee's condition was not the result of infection from appellee's teeth or tonsils. The evidence supports appellee's contention that appellant, through its agents, knowing that appellee would be required to step or jump from moving cars, 24 to 30 inches from the surface of the ground, 150 to 200 times each night, placed loose rocks measuring from one to five inches in diameter along and over such pathway, and therefore was sufficient to authorize the court in submitting the issue of proximate cause to the jury. The issue of proximate cause, like that of negligence, when raised by the evidence, is a question for the jury and not the courts. The fact that it is sometimes difficult to determine furnishes no sound reason why it should be withdrawn from the jury.

Appellant's third point raises the same question as to proximate cause as does its point No. 2. We therefore overrule point No. 3 for the same reasons given for overruling appellant's point No. 2.

In appellant's point No. 4, they contend that in as much as that appellee's condition came on gradually and not on any specific occasion or by any specific incident, the appellee failed to establish that he had sustained "an injury" in accordance with the meaning of that term as used, and found in Section 51, Title 45, of the U. S. C. A. The Federal statute applicable to this character of cases authorizes recovery for injuries resulting in whole or in part from the negligence of the officers, agents or employes of such carrier. There is nothing in the Act that requires that the injury occur on one specific date or result from one specific incident. If it be true that the appellee suffered injury, as his testimony indicates, from repeated jumps on the pathway which had been negligently covered with rocks, from two to five inches in diameter, as found by the jury, we can see no valid reason for denying appellee the right of recovery simply because the injury suf-

fered by him was the result of repeated traumas instead of one specific injury. We have been cited no authorities which we feel support such contention, and being of the opinion that no good reason is advanced why such rule should be applied, this point is overruled.

By points Nos. 5 and 6, appellant contends that there was no evidence that such rock, from two to five inches in size, remained on said track between Irving Street and Chaison Junction Switch until sometime after the 1st day of August, 1943, that the trial court committed error in submitting such issue to the jury, and that having done so it committed error in refusing to set aside the verdict of the jury finding that appellant did permit such. As heretofore stated in this opinion, the appellee testifying in regard to the size of the rocks left upon said pathway, did so by indicating the size of such rocks. The trial court and the jury were in a position to observe the witness when indicating the size of the rocks and this court will presume that such evidence was sufficient to justify the trial court in submitting the issue, and the finding of the jury in answer thereto to the effect that appellant did allow such rocks to remain on its tracks and roadbed at the place in question and for the time inquired about. For this reason such points are overruled.

By appellant's 7th and 8th points, it makes the same contention that there was no evidence authorizing the submission of special issue No. 4, inquiring as to whether or not allowing such rocks of such size to remain there for such time was negligence, and that the court committed error in refusing to set aside such finding. These points present the same matter in a different form as points 5 and 6, and are overruled without further discussion.

By points Nos. 9 and 10, appellant contends that the evidence was insufficient to raise the issue that appellee sustained an injury on or about June 15, 1943, as was found by the jury, and that the court erred in failing to set aside and disregard the finding of the jury to the effect that appellee did receive an injury on or about June 15, 1943, and again urged that in as much as appellee's injuries, if any he received, resulted from jumping on said rocks from 150 to 200 times per night for 87 nights without any evidence to the effect that any specific injury was sustained by him on June 15, 1943, that there is no

evidence to justify the court in submitting such issue to the jury, nor to support the finding of the jury thereto. While appellee alleged that his injury was received on or about the 15th day of June, 1943, he also alleged in substance that on the 15th day of May, 1943, and continuously from said date until about the 10th day of July, 1943; that in the course of his employment for appellant he was required constantly to walk along and over appellant's track and to get off of said cars and that his injuries were the result of continuous jumping upon said rocks. These allegations and the testimony offered were sufficient to support a finding by the jury that the appellee sustained personal injury "on or about" June 15, 1943. See Kerr v. Blair, 47 Tex.Civ.App. 406, 105 S.W. 548, at p. 551; Texas & N. O. R. Co. v. Weems, Tex.Civ.App. 184 S.W. 1103.

For the reason heretofore given, appellant's points Nos. 11, 12, 13 and 14, to the effect that the evidence was insufficient to show that the appellee sustained personal injuries in the course of his work as a switchman with the appellant, that the court erred in failing to set aside the finding of the jury to such issue, and that there was no evidence to authorize the court in submitting to the jury an issue inquiring whether appellee sustained personal injuries by stepping on or against the rocks, if any, on appellant's roadbed, and that the court committed error in refusing to set aside and disregard the finding of the jury to the effect that the appellee did so sustain personal injuries, are overruled. Also points Nos. 15 and 16, to the effect that the evidence was insufficient to authorize the court to submit the issue as to whether appellee's injuries were caused by the negligence of the appellant in allowing rocks from two to five inches in diameter to remain on its roadbed, and to support the jury's findings on said issue that the appellee's condition was so caused, are overruled for the reasons heretofore given. To the same effect are points Nos. 17 and 18, which are overruled.

By point No. 19, the appellant complains that in as much as the evidence offered by the appellee was to the effect that appellee was suffering on and subsequent to June 15, 1943, with impairments in no wise caused by or the result of his employment with appellant, that the trial court committed error in refusing to instruct the jury in connection with special issue No. 19, inquiring as to the amount of damages by reason of any incapacity to labor or work in any wise brought about by such diseased condition, if any, which he would have suffered irrespective of any negligence, if any, on the part of the appellant. On the trial of the case, the appellant offered testimony of medical witnesses to the effect that appellee's condition was the result of infected teeth and tonsils, while appellee's medical testimony was to the effect that his condition was the result of repeated traumas caused from continuously jumping on a rocky pathway. In this state of the record, the court at the request of appellant inquired of the jury in several special issues as to whether appellee's infected teeth and tonsils were solely the result of appellee's incapacity, and whether the failure of appellee to have his teeth and tonsils removed was negligence, whether such negligence, if any, was the sole proximate cause of his incapacity, and whether such negligence contributed to the cause of appellee's incapacity, and if so what percentage of his incapacity such failure contributed. Having thus directly submitted the defensive issues as to the effect his teeth and tonsils had on his incapacity, if any, he suffered, it was unnecessary for the court to again instruct the jury, in connection with the issue of damages, to allow no damages by reason of his incapacity to work which was in any wise brought about by such diseased condition. The manner of the submission of these defensive matters amply protected the appellant in its rights in connection therewith and had the jury returned favorable answers it would have thereby been afforded complete benefit of such defenses. This point is overruled.

By Point No. 20, appellant complains of the instruction of the court in connection with special issue No. 19, because it says the jury was not properly instructed as to any future benefits that it may allow in assessing damages in that it was not properly instructed that such would be assessed and allowed for only at the present worth of such. We are unable to agree with appellant's contention.

Paragraph 3 of the court's instructions to the jury in connection with special issue 19 was as follows:

"Third: You are further instructed, in connection with this special issue No. 19, that the amount, if any, allowed by you

for any such decreased ability, if any, to work and earn money, if any, and for his physical suffering, if any, should be such amount, if any, as is the present value thereof, and in determining the present value thereof you will calculate it at the rate of six per cent compound interest annually and determine the present value of any such amount, if any, by discounting the same or deducting therefrom annually an amount, if any, equal to six per cent rate of compound interest during the period for which you may allow such damages, if any, and make the result your answer."

This instruction is substantially the same instruction approved by the Supreme Court of this state in the case of Texas & P. Ry. Co. v. Perkins, Tex.Com.App., 48 S.W. 2d 249. On the trial of this case it was agreed between the parties that six per cent was the highest rate of interest that money could be loaned on safe investments. While the charge of the court instructed the jury that in determining the present value of the damages arrived at they would deduct an amount equal to six per cent compound interest annually. If there be any error in this instruction, it seems that it would be in favor of the appellant and therefore it is in no position to complain. There seems to be no specific rule by which juries are to determine the present value of damages which accrue in the future but it is not believed that any rule would require same to be discounted at a larger per cent than six per cent compound interest annually. Therefore, if there was any error in the charge given it worked to the injury of appellee and not to the injury of appellant.

By point No. 21, appellant complains that the verdict of the jury assessing appellee's damages in the sum of $20,000 is excessive for the reason that the evidence failed to show that anything occurred on or about June 15, 1943, that was a proximate cause of appellee's entire condition (as distinguished from repeated jumps over the period of May 15, 1943, for 87 days thereafter). As heretofore stated, the evidence offered by appellee was to the effect that he was totally and permanently disabled and that he had a life expectancy of 19½ years. Appellant contends that in as much as that there was no specific incident happened on the 15th day of June, 1943, resulting in injury to the appellee and because the evidence shows that such incapacity as he has, if

any, was the result of 18,000 jumps distributed over 87 nights, that the jury was not warranted in finding that the appellee suffered damages in the amount of $20,000 on or about June 15, 1943. We have dealt with this contention in connection with other issues and we here overrule same without further discussion.

By appellant's point No. 22, it contends that the finding of the jury to the effect that appellee's incapacity to work and labor after May 12, 1943, was not caused to any extent by his infected teeth and infected tonsils, was without support in the evidence. As heretofore stated, appellee's medical testimony was to the effect that his incapacity was not the result of infected teeth or tonsils, while the medical testimony for appellant was to the effect that the incapacity of appellee was the result of infected teeth and tonsils. Such conflicting testimony presents an issue of fact for the jury to determine and having done so it is not for the court to disregard such findings and substitute therefor such findings as the court may be inclined to make.

By their 23rd and last point, appellant complains of the action of certain members of the jury in giving audible answer to questions from appellee's attorney while he was addressing the jury, to the effect that certain members of the jury had taken note of the fact that one of the witnesses for appellant turned pale when asked certain questions on cross examination by the attorney for appellee. From the bill of exception covering this matter, it appears that while the attorney for appellee was making his argument to the jury, asked whether or not they had noticed the pale color a certain witness for appellant turned while being cross examined by him, whereupon three of the jurors stated that they had. Upon objection being made and overruled, the attorney again asked if any others saw it, at which time three other jurors indicated they had. Appellant contends that this conduct had the effect of impeaching its witness without an opportunity being given to cross examine such jurors and was of such a prejudicial nature as requires a reversal of this cause. While this procedure is rather unusual, we are unable to agree with appellant as to its damaging effects. The jurors had a right and should observe the conduct and demeanor of witnesses while testifying in order to enable them to prop-

erly evaluate their testimony, and for such jurors to reveal in advance of a verdict that they had been alert and had observed the witnesses while testifying furnishes no basis for this court to reverse and remand cases on account thereof.

Being of the opinion that in the trial of this case the appellant was granted all of its rights under the Federal Employers' Liability Act, and that no good reason has been brought forward requiring this court to disturb the judgment as entered in the court below, the same is affirmed.