## GULF, C. & S. F. RY. CO. v. OGDEN.
### No. 4651.

Court of Civil Appeals of Texas. Beaumont.
March 16, 1950.

Rehearing Denied April 5, 1950.

Chilton O'Brien, Beaumont, for appellant.
Fisher & Tonahill, Jasper, for appellee.

R. L. MURRAY, Justice.

The appellee, Tommy Ogden, was working as a member of a section crew engaged in repairing the right of way of the appellant, Gulf, Colorado & Santa Fe Railway Company, on August 11, 1948, and while so engaged he suffered injuries because of becoming overheated. He brought suit in the district court of Sabine County, alleging that the appellant railroad company was guilty of 18 various acts of negligence which he alleged had negligently and proximately caused his injuries and damages. Among such allegations of negligence were failure to provide him a reasonably safe place in which to work; failing to provide him reasonably safe conditions under which to perform the work required of him; failing to take care of him while he was in a stricken condition, with reasonable prudence and due care; requiring him to resume working under conditions prevailing after he complained to his foreman that he was becoming overheated; failing to administer immediate medical attention when he first complained of becoming overheated, thereby prolonging and aggravating the onset of his condition in the face of emergency conditions; refusing to relieve him of the performance of the duties required of him after he had complained to his foreman that he was becoming too hot. He also alleged that as a result of such injuries he had become totally disabled from performing work.

In answer to this pleading the appellant filed a general denial, special denial of any negligent act on its part and pleaded affirmatively that appellee's injuries and damages were due solely to his own acts; that he was a better judge of his abilities and conditions at the time of his injuries than anyone else and that he failed to observe proper care for his own safety in several particulars.

At the conclusion of the evidence the appellant moved the court to instruct a verdict in its favor.

Appellant later brought before the court again its contention that the evidence was insufficient to warrant submission of the case to the jury in many objections to the court's charge and again later in its amended motion for new trial. The motions were overruled and the cause was submitted to the jury on special issues.

In its verdict the jury found that: Ogden sustained a personal injury while in the course of his employment with defendant as a result of getting too hot; that before

he sustained personal injury he informed the foreman that he was getting too hot; that the foreman directed him to continue working after being informed by Ogden that he was getting too hot and that after being so directed he resumed the usual duties of the tasks he had been assigned; that it was negligence for the foreman to direct Ogden to continue working after being informed by him that he was getting too hot and that such negligence was a proximate cause of his injury; that he informed his foreman that he was becoming overheated in such a manner that because of his condition then and there existing an emergency existed requiring Ogden's immediate medical care and assistance; that the foreman failed to exercise reasonable prudence and due care for Ogden's welfare under the circumstances after being informed that he was becoming overheated; that it was negligence for the foreman to fail to exercise reasonable prudence and due care for Ogden's welfare after being so informed by Ogden and that such negligence was the proximate cause of Ogden's injury. The jury made other findings but the above are those upon which the appellee relies in his brief to support the judgment of the court in his favor, rendered upon such verdict.

Other findings made by the jury, in answer to special issues 3, 5-A, and 5-D, were that under all the conditions and circumstances then and there prevailing the duties assigned Ogden by the appellant's foreman did not subject Ogden to the performance of duties which subjected him to a greater than ordinary hazard from overheating; that under all the conditions and circumstances then and there prevailing the appellant's foreman did not require Ogden to perform work in its behalf in an unreasonable manner; that Ogden was not assigned duties by appellant's foreman to be performed in appellant's behalf in a manner which, in view of all the factors of life and experience, exposed Ogden to unreasonable risks of harm and injury from overheating. The above answers of the jury were specifically set aside and disregarded in its judgment by the trial court, as being immaterial.

Other findings of the jury in its verdict which were by implication set aside as immaterial by the trial court in its judgment, were the jury's answers to special issues Numbers 16 through 33, and 42 through 54, to the effect that Ogden had an equal opportunity to that of his foreman to observe the conditions and circumstances under which he was performing his work; that Ogden was in a better position than his foreman to determine his own physical condition and his ability to do the work which he was performing under the circumstances and conditions existing; that Ogden failed to anticipate an injury to himself from becoming overheated as a result of his performance of his work under the circumstances and conditions existing; that such failure on the part of Ogden to anticipate injury was not negligence; that Ogden failed to anticipate an injury to himself from becoming overheated as a result of his returning to work after he had stopped work and gone to the shade; that such failure was not negligence; that Ogden failed to observe that he might become overheated as a result of the performance of his work under the circumstances and conditions existing; that such failure to observe was not negligence; that Ogden failed to observe that he might become overheated as a result of returning to work after he had stopped work and gone to the shade; that such failure to observe was not negligence; that salt tablets were available to Ogden's crew of workmen and that Ogden did not fail to take any salt tablets on the day in question; that Ogden did not fail to exercise proper care for his own safety and welfare; that the work being done by Ogden was being done in the usual and customary manner and with the usual and customary tools; that the appellant's foreman had told the members of the crew that if they got too hot they could stop work and go to the shade.

On appeal the appellant brings forward 9 points of error. Its first point is: "The error of the court in refusing to instruct a verdict for appellant, there being no evidence of any negligent act on the part of the appellant or that any act of the appel-

lant proximately caused appellee's injuries and damages." Its second point is: "The error of the court in refusing to grant appellant's motion for judgment non obstante veredicto, the jury's finding that the acts of appellant were negligent and were the proximate cause of appellee's injuries having no support in the evidence."

The appellee says that this case is similar to the cases of Kansas City Southern Railway Co. v. Chandler, 192 S.W.2d 304 and Gulf, Colorado & Santa Fe Railway Co. v. Waterhouse, 223 S.W.2d 654, both decided by this court. He contends that this cause should be affirmed on authority of these two cases and that of Szabo v. Pennsylvania R. Co., 132 N.J.L. 331, 40 A.2d 562 and the authorities cited in those three cases. In considering the application of the law relating to the Federal Employers' Liability Act and 1939 amendment thereto, 45 U.S. C.A. § 51 et seq., as applied in the Chandler and Waterhouse cases above and the numerous decisions of the U. S. Supreme Court cited in those cases, including the case of Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967, it is necessary that at least some of the evidence in the instant case be quoted.

Ogden himself testified that he was 42 years of age, had always been a strong healthy man and had gone to work for the appellant company in April, 1947, doing section work, keeping up the track on the main line which runs from Beaumont to Longview; that his duties entailed the cutting of the right of way and doing everything pertaining to keeping up the right of way, working on cattle guards and road beds; that one Hartman was the section foreman under whom he worked; that they did track maintenance and dressing on 15 miles of track; that in doing so the workmen dig down upon each side of the track, level it up and clean off the ties, which was as hard work as he had ever done in his life; that on the day of his injury they were dressing the track, and it was an extremely hot day, about as hot as the witness had ever known it; that he noticed a change in his physical condition about 11:40 that morning

when his head began hurting, he dried up with sweat and he went and got a drink of water and returned near the boss and told him about it. He told the foreman Hartman that "it was the hottest day I believe I ever seen; I didn't know whether I was going to make it or not." The foreman replied to him, "Well, we got so much work to do and only got 7 men to do it with and it ain't long until dinner." He understood the foreman to mean that he should go back to work and he went back and tried to work. He says his condition got "worser" and he went to the shade about 11:30. At lunch time, which was at 12 o'clock, he ate a little of his lunch at which time he talked to Mr. Hartman. He told Hartman how his head was hurting and the spell he had. Hartman asked him: "Don't you think it was something you eat caused that?" and Ogden replied "No, he had never felt any better than when he went out there that morning." He told him "What was the matter with me was that gravel and that hot sun." At 1 o'clock the foreman gave the usual sign for all to go back to work; the foreman said nothing to Ogden about not going back to work. He went back to work at 1 o'clock, the usual time, and was able to work only about 40 or 50 minutes at which time he had a severe attack with a sharp pain in his head, his ears roaring and "I was trembling and shaking like a man with a chill." On direct examination the appellee testified that he thereupon told his foreman; "I don't feel like I can go any further," to which the foreman replied: "Well, we got so much work to do and we already have been longer on this gravel than we had the other cars before" and that Ogden understood him to mean by this statement that he wanted him to work; that Ogden told him he could either cut him off, do what he wanted to do, that he was going to the shade; that Hartman then just turned around and went on back where the others were working. On cross-examination, however, he testified that he went to his foreman and told him about his condition, that "I can't go no more—you can either cut me off or do what you want to"; the foreman told him there was lots of

work to do and then told him he would have to go to the shade and he then went to the shade. From that time until time to go in he "laid out in the shade". At the end of the day's work he asked the foreman for a "script" to see the doctor and was given such a script. He went home and had a bad night and went to see a doctor the next day.

Before Ogden can recover from the appellant railroad company for his injuries it is incumbent upon him to show by the evidence some act of negligence on the part of the appellant or its foreman. The Federal Employers' Liability Act, as amended by the Act of Congress of August 11, 1939, Title 45 U.S.C.A. § 51, provides for liability only for acts of negligence on the part of employers and its agents. As pointed out by Justice Black in Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 417, 93 L.Ed. 497, "The Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries." The evidence in this case does not show that Ogden at the time of his becoming overheated was incapable of caring for himself or incapable of requesting assistance. He did not fall to the ground or become unable to walk or talk, and did not request assistance of any sort, except what was promptly furnished him. He walked over to the shade, lay down and asked for a drink of water which was brought to him. According to the evidence and the jury's findings, he was experienced in the kind of work he was doing and knew as much about the effects of the sun's heat upon him as anyone else knew; he himself did not foresee or anticipate any injury to himself because of his work or because of his return to work after he ate his lunch; nothing appellant's foreman did or said is shown to have intensified his exposure to the sun or subjected him to any extraordinary hazard from the heat. Compulsion or coercion is not sufficiently shown by Ogden's testimony quoted above as causing him to remain at his work after he felt he was becoming too hot. In fact, such

evidence shows that Ogden quit work and went to the shade after talking to his foreman. The evidence in this respect, which is quoted above, seems to us to be insufficient as to the principal fact which made recovery by plaintiff possible in the Waterhouse case, supra. We do not agree with the contentions of the appellant as brought forward in its first and second points that there was no evidence to support the findings of the jury, in answer to Special Issues Nos. 7, 8, 9 and 10, to the effect that Ogden's foreman directed him to continue working after being informed by Ogden that he was getting too hot; that after being so directed by the foreman Ogden resumed his usual duties; that it was negligence for the foreman to direct Ogden to continue working and that such negligence was the proximate cause of his injuries. We do believe, and so hold, that the evidence is not sufficient in that respect. We do agree with the contention of the appellant that there is no support in the evidence of the jury's findings in answer to Special Issues Nos. 11-A, 12, 13 and 13-A, that Ogden informed his foreman that he was becoming overheated in such a manner that because of his condition an emergency existed requiring Ogden's immediate care and assistance, and that the foreman failed to exercise reasonable prudence and due care for Ogden's welfare under the circumstances and that this was negligence and a proximate cause of Ogden's injuries. We find no evidence in the record supporting such findings in the verdict or warranting submission of such issues to the jury for determination. Ogden himself from his testimony did not think he was in such a bad condition that he immediately diagnosed it as heat prostration or being overheated, requiring immediate medical attention. The other members of the crew working with him did not so regard it as being so desperate a condition that an immediate necessity required the immediate attention of themselves or the foreman or medical attention. He himself went home that night instead of going to a doctor or to the hospital. There is nothing shown here by which the foreman could be charged with knowledge that Og-

den would probably suffer some harm or injury unless he, the foreman, secured medical aid for him immediately. He knew no more about Ogden's condition than Ogden did and from the evidence produced by the plaintiff Ogden and from his own testimony, there is nothing to show that any reasonable person who found himself in the situation in which the foreman was at the time Ogden informed him that he was getting too hot would have done anything other than what the foreman did do here. In the afternoon he relieved Ogden of his duties and sent him to the shade. When Ogden asked for water other members of the crew brought him water. In about one hour the day's work was completed and Ogden, with the whole gang, rode on the section car back to the section house. When Ogden asked for a slip to see a doctor he was given this slip or "script" as it was called. As we view the facts the foreman did what an ordinarily prudent man would have done under the circumstances and did not fail to do anything which the same ordinarily prudent person would have done under the circumstances.

The only thing in Ogden's testimony which can be termed any evidence that his foreman caused him to return to his work when he complained of the heat was that in regard to the incident in the morning. When the foreman gave the general call to the whole gang to return to work after lunch, that cannot be deemed a special and negligent order to Ogden to return to work. In the afternoon when Ogden complained, the foreman sent him to the shade. This incident cannot be regarded as an order to return to work. The morning incident is the only thing that suggests an order to return to work, and while it is some evidence we regard it as insufficient to support the jury's finding that Ogden was negligently ordered back to work after he complained he was getting too hot.

We therefore sustain appellant's fourth point, which is that its motion for new trial should have been granted, because the answers of the jury on which liability was predicated in the trial court's judgment were without sufficient support in the evidence and contrary to the weight and preponderance of the evidence.

We believe the above holdings make unnecessary any discussion of the other points raised by appellant.

The judgment of the trial court is reversed and remanded for a new trial.