Guy A. THOMPSON, Trustee, New Orleans, Texas & Mexico Railway Company, Appellant,

v.

Jay Lee GIBSON, Appellee.

No. 15711.

Court of Civil Appeals of Texas.

Fort Worth.

April 20, 1956.

Rehearing Denied May 18, 1956.

Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren, Carroll R. Graham, and Howard S. Hoover, Houston, for appellant.

Doerner, Rinehart & Stuart, Tulsa, Okl., Parks, Cire & Jamail, Fred Parks and George E. Cire, Houston, for appellee.

MASSEY, Chief Justice.

This is a suit brought by Jay Lee Gibson against New Orleans, Texas & Mexico Railway Company, and others, for damages on account of personal injuries under the Federal Employers' Liability Act, as amended in 1939, 45 U.S.C.A. § 51 et seq., Gibson, an engineer for the defendant Railroad and its Trustee, was injured as the result of a fall in the Settegast Railroad Yards in Harris County, Texas. Trial to a jury resulted in a judgment in favor of the plaintiff and against the defendant, from which the defendant appealed.

Judgment affirmed.

The parties will be designated as in the trial court.

Defendant has brought forward eight points on appeal, the first six of which are disposed of adversely to defendant's contention in view of our conclusion that there was sufficient evidence of probative force and effect to support all but one of the negligence and proximate cause special issue findings made against the defendant. The judgment entered was based thereon, and the finding which was not supported was not fatal to those which were.

The date of plaintiff's injuries was December 5, 1950. On said date the Settegast Yards had been open approximately six months. The tracks within said yards run generally from north to south. The "sets" of tracks, used in the "making up" of trains, were known as "A", "B" and "C" yards. The roundhouse was located at the west side of all three yards. "C" yard was the most easterly yard. The distance between the roundhouse and "C" yard was approximately 900 feet. . In walking from the roundhouse to "C" yard an individual must cross all the trackage of "A" yard and "B" yard. There had been no provision made for any walkway in traversing these yards, and, indeed, even had there been one it would be inconceivable for a person going from the roundhouse to an engine "spotted" in "C" yard to have used it, in view of the boxcars and engines on the tracks intervening and in view of the activity on such tracks where trains were being made up or where switching activity was in progress. The evidence showed that such a person, on such a trip, would walk from the roundhouse more or less directly toward the point where the engine (which was his destination) was "spotted" on a track in "C" yard, detouring as necessary on account of activity or idle equipment upon the intervening tracks of yards "A" and "B".

And this was what plaintiff did on the night in question. He had been assigned for several years to the pool freight service running between DeQuincy, Louisiana, and Houston, Texas. The freight trains on this run had been operating in and out of Settegast Yards since they were opened. Plaintiff had been called to take a freight train out of Houston to DeQuincy. He checked in at the defendant's yard office, obtained a ride to the roundhouse, and undertook to walk therefrom to the engine of his train which was "spotted" on a track in "C" yard.

In the newly opened premises the gravel was loose and unpacked. It was about a foot deep in most places, though deeper than that in some others. In the area alongside the tracks where the brakemen were required to work, the loose character of the gravel had been corrected through the use of cement and sand, but between the ties and rails there had been no corrective action. The same thing was true for a foot or two and more to either side of the tracks. This gravel would shift and a person walking thereon would tend to slip and slide as it shifted. It made walking difficult and tiring. Additionally, there was evidence that in the gravel there were stones from "boulder-size" down. Some of these tended to roll as the gravel shifted when a person walked thereon.

As plaintiff, a man weighing 254 pounds, walked across one of the tracks en route to his engine, his foot came down on the graveled surface which included a stone that shifted and rolled. When this occurred, the toe of his shoe was moved in under the web of the rail. Being off-balance the trust of his other foot resulted in the shifting of the gravel, etc., as he tried to keep himself from falling, as the result of all of which he did fall, "twisting" upon one knee, down to at least a semiprone position.

The defendant has interesting and persuasive argument premised upon a distinguishment of the particular object which rolled under plaintiff's foot, carrying it under the rail web. The plaintiff described it from the feel and movement thereof under his foot as a "rock". He testified on cross-examination that he did not see it after he fell, nor did he see it before his foot slipped. He clarified the situation somewhat, to our manner of thinking, when he said, "I couldn't see the rock. There was billions of rocks out there." At least, in our opinion, from this and all the rest of

his testimony, and the testimony of other witnesses in the case, the jury was warranted in drawing the inference that he was talking about the larger-sized stones which were a part of the whole mass making up the gravel and one of which rolled within the body of gravel located immediately under his foot. This was within the jury's province and was an inference it was entitled to draw.

In Texas the term "rock" means to most natives what is generally considered as a "stone" by people in certain other parts of the United States, and also to the authors of most dictionaries. Webster uses the word "stones" in his definition of gravel, but we believe that many Texans would more readily understand what he meant had he substituted the word "rocks". He defines gravel as "small more or less rounded stones and pebbles, often intermixed with sand." See also 38 C.J.S., Gravel, p. 1074.

 We believe that in accord with our duty in a case posing the questions here dealt with we are obligated to indulge every reasonable inference in favor of the successful party and disregard all adverse evidence. Furthermore, this being a suit under the Federal Employers' Liability Act, we must remember that the character and amount of evidence requisite to establish negligence on the part of the defendant is not to be tested by Texas rules of law thereupon but instead by those to be applied to such cases as presenting a Federal question. Texas & P. Ry. Co. v. Younger, Tex.Civ. App. Fort Worth, 1953, 262 S.W.2d 557, writ refused, n. r. e., and cases cited. The decisions of the Federal Courts in these cases establish that the jury has the right to make " 'all reasonably possible inferences' " from such of the facts in the evidence as it chooses to accept. Louisville & N. R. Co. v. Botts, 8 Cir., 1949, 173 F.2d 164, 167, and cases therein summarizing the principal Supreme Court decisions under the Act upon the matter of tests to be applied in sufficiency of evidence questions.

 The jury found that the defendant was negligent in failing to use gravel of uniform size and in failing to pack the gravel which was used about and between the railroad tracks, in requiring plaintiff to walk from the roundhouse across the yard to his engine under the circumstances existing, and in failing to provide a smooth walkway or path from the roundhouse across the yards to where the engine was "spotted". Each negligence finding was also found to constitute a proximate cause of the injuries the plaintiff sustained.

In view of the fact that the conditions in the Settegast Yards were shown to have persisted for approximately six months, there is no doubt but that the defendant must be considered to have had knowledge thereof. Surely, also, defendant had knowledge that it was necessary for plaintiff and other employees to walk across the premises as plaintiff did on the occasion in question. In view thereof, and in view of the testimony about the way and manner in which the gravel used about and between the tracks would shift and slide as a person walked thereon, about the large sizes of some of the stones in the gravel, coupled with the showing that such condition was not such as existed generally in railroad yards, the jury was warranted in finding that the defendant was negligent in failing to pack the gravel used and that such negligence was a proximate cause of plaintiff's injuries. Chicago Great Western Railway Co. v. Smith, 8 Cir., 1955, 228 F.2d 180; Kansas City Southern Ry. Co. v. Chandler, Tex.Civ.App. Beaumont, 1945, 192 S.W.2d 304, writ refused, n. r. e.; Fleming v. Husted, 8 Cir., 1947, 164 F.2d 65; Fleming v. Kellett, 10 Cir., 1948, 167 F.2d 265; Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

We do not believe the jury's finding of negligence in connection with defendant's failure to use gravel of uniform size about and between the tracks was supported by the evidence. There is no evidence that the gravel which was used by the defendant was not of a size suitable for the purpose. Of course, gravel of uniform sized stones or pebbles would be better, but a master is not by reason thereof obliged to

use it. It was not located where members of the general public, unfamiliar with usages in railroad yards, would come in contact with it. For the purposes of railroad engineers, who must walk across tracks as the plaintiff was required to do, something less fine than gravel of uniform size should certainly be reasonable. There is no evidence in the record to the contrary. Indeed, the record does not demonstrate any duty on the part of the defendant to use any gravel at all in the railroad yards. Fort Worth & Denver City Ry. Co. v. Burton, Tex.Civ.App.Amarillo, 1942, 158 S.W.2d 601, writ dismissed; Louisville & N. R. Co. v. Davis, 6 Cir., 1935, 75 F.2d 849; Norfolk & W. Ry. Co. v. Hall, 4 Cir., 1931, 49 F.2d 692.

■ The conditions created by the character of the gravel in question in the Settegast Yards were continuous rather than an unusual circumstance existing at the time plaintiff's duty required him to walk across the premises. We are of the opinion that it was for the jury to determine whether defendant's failure to provide him with a reasonably safe facility whereby the distance from the roundhouse to the engine might be traversed, or to make reasonably safe the premises necessary to be traversed in reaching the engine, was negligence and a proximate cause of his injuries, particularly in view of the fact that assumption of risk is not a defense to suits for damages in this kind of case. Texas & P. Ry. Co. v. Presley, 1941 Tex.Com.App., 137 Tex. 232, 152 S.W.2d 1105; Chicago Great Western Railway Company v. Smith, supra; Kansas City Southern Ry. Co. v. Chandler, supra; Fleming v. Husted, supra; Fleming v. Kellett, supra; Lavender v. Kurn, supra; Missouri-Kansas-Texas R. Co. v. Evans, 1952, 151 Tex. 340, 250 S.W.2d 385.

■ In view of the matters hereinbefore related, plaintiff's judgment is supported by evidence of sufficient probative force and value, despite our holding that one of the negligence issues does not contribute to such support.

By a seventh point the defendant contends that the trial court erred in refusing to set aside a jury finding that the plaintiff's negligence in failing to use a flashlight as he walked upon the occasion in question was not a proximate cause of his injuries. The jury affirmatively found such negligence. It is to be noted that in answer to a special issue, the burden of which was cast upon the plaintiff, the jury found that the defendant did not fail to properly illuminate the portion of the yard plaintiff was required to use in carrying out his duties. Under the circumstances of this case, we are of the opinion that the question was for the jury and the answer within their power of ultimate determination. The point of error is overruled.

■ Defendant preserved an additional exception to the submission of the special issue which inquired whether defendant was negligent in failing to use gravel of uniform size about and between the tracks where the plaintiff was required to walk. Defendant contended that the issue assumed that gravel of a uniform size was not used and therefore the manner in which it was framed constituted a comment upon the evidence. The evidence was undisputed that the gravel used was not made up of stones or pebbles of uniform size. Defendant's testimony was to the effect that any sized "rock" which would go through a two-inch screen was included. The point of error would be overruled for this reason. It is noted, however, that we have already held that the issue was not raised by the evidence and should not have been submitted. Further noted was our conclusion that plaintiff's judgment would nevertheless find support in the answers returned to other issues. The same thing would be true were we to sustain defendant's point of error because the issue amounted to a comment upon the evidence. It would not be such error as would inhibit the judgment, as it would be confined to the issue, one unnecessary to the judgment, and therefore harmless. Texas Rules of Civil Procedure, rule 434.

Judgment is affirmed.