## COOKINGHAM v. UNITED STATES et al.
### No. 219 of 1947, Admiralty.

United States District Court
E. D. Pennsylvania.
July 20, 1949.

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, Philadelphia, Pa., for defendants.

KIRKPATRICK, Chief Judge.

This is an action in admiralty by a seaman to recover damages for personal injuries, for maintenance and cure, and also to recover the value of his personal effects.

The libellant, who was second cook and baker on board the Rufus W. Peckham, was going down a stairway leading to the chill box to get some food for the crew when he slipped on a substance, apparently Jello, which lay on one of the steps in a patch containing two or three tablespoonfuls, and was injured. The stairway was properly constructed and there was sufficient light.

There was no direct evidence as to how the substance got on the step. Presumably, it was dropped there by some one but there is no evidence as to when or by whom. The stairway in question was used by galley men to carry food from the chill box to the galley and on the voyage food had frequently been dropped on it. The accident occurred at about 8:30 p. m. On that day supper had been served at 6 o'clock, and if the substance was food from the chill box (a fact not proved) it would probably have been brought upstairs at that time; but there is no evidence as to how long the meal lasted or when the table was cleared or when any food which may have been left over was taken back to the chill box, and nothing to show whether the substance, whatever it was, was dropped on the way up or the way down.

The ship was lying in port. The libellant's wife and little girl were on board at the time of the accident and it does not appear whether or not other persons not members of the crew were also on board at the time or had been shortly before.

■ A seaman injured in the service of the ship may recover compensatory damages if his injuries were caused by the unseaworthiness of the vessel or by the negligence of the master or members of the crew, or both combined. Pacific Steamship Company v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220; German v. Car-

negie-Illinois Steel Corporation, 3 Cir., 156 F.2d 977.

■ The libellant's evidence fails to establish negligence. Boyce v. Seas Shipping Co., 2 Cir., 152 F.2d 658; Garcia v. Sun Oil Co., District Court E.D.Pa., June 18, 1937, Maris, J.[1]

■ Nor do I think that the evidence shows that the owner had failed to maintain the ship in a seaworthy condition. The definition of the owner's duty in this regard, stated in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 487, 47 L.Ed. 760, has been followed ever since. It is that the vessel and owner, in addition to being liable for injuries caused by furnishing an unseaworthy ship, are liable "for injuries received by seamen in consequence of * * * a failure to supply and keep in order the proper appliances appurtenant to the ship."

■ Undoubtedly the owner's duty to furnish, at the outset of a voyage when the seaman first comes aboard, a ship and appliances in all respects seaworthy is absolute and his liability if the ship is unseaworthy is a species of liability without fault, not limited by conceptions of negligence. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099.

It may be granted that the correlative duty to keep in order the proper appliances appurtenant to the ship and maintain the ship in a seaworthy condition is a more exacting one than that of exercising ordinary care and that if breached it may impose liability without negligence, as that term is known to the law. The duty is absolute in the sense that if injury results from a fault in appliances or equipment the owner will be liable. Still, in a case where there has been no fault or failure of appliances or equipment and the injury was caused by a transitory condition such as some foreign substance spilled or some object misplaced on the deck, the conception of failing to keep in order the ship's appliances involves, not necessarily negligence, but at least some possibility of removing or correcting it. I do not, for example, think that in such cases the duty is so absolute that if this libellant's wife had preceded him down the stairway and had dropped something on the stairs on which he slipped the owner could be held for failure to maintain the ship in a seaworthy condition or keep in order an appliance appurtenant to the ship. Or, to carry the illustration further, suppose the libellant himself, holding a dish of Jello in front of him, had without fault spilled some and then slipped on it.

■ It is unnecessary, so far as this case is concerned, to explore the point in an effort to ascertain the precise limits of the duty and the precise extent of the corresponding liability. This case calls for no more than a ruling that where an injury is caused by a small quantity of foreign substance spilled upon a stairway with no evidence to show how long before the accident it was spilled the owner is not liable for a breach of duty to maintain the ship in a seaworthy condition.

■ The libellant argues that, in addition to negligence and unseaworthiness, there is also a third basis of liability independent of the other two, namely, failure of the owner to furnish a safe place to work. The libellant apparently considers the owner's duty in this respect even more absolute than the duty to maintain the ship and its appliances in a seaworthy condition. However, the excerpts from several opinions which he has cited in support of his contention do not seem to be more than somewhat inexact expressions used in cases, in each of which the cause of action sustained was plainly either negligence or unseaworthiness. If the place where a seaman works is unsafe that is a fact which may establish that the ship was unseaworthy or that the employees were negligent, but I find no basis for holding that there is a third and separate ground of liability in this regard.

■ On his claim for cure and maintenance the libellant is entitled to $3.50 per day from July 31, 1946, until April 8, 1948, exclusive of the periods when he was an in-patient in the Marine Hospital and when

1. No opinion for publication.

he was employed on the James Gillis. April 8, 1948, brings him up to the time when, according to the best estimate that I can make, his condition had become stabilized and the disability, whatever its extent may have been, could not be improved further.

On his claim for his loss of personal effects, I award him the sum of $50.

The facts stated in the foregoing opinion may be taken as the Court's special findings and the statements of law as the Court's conclusions of law.

In addition, I affirm the libellant's requests for findings of fact relating to cure and maintenance, Nos. 20 to 27 and 35 to 39, inclusive.

A decree may be submitted in accordance with the foregoing.