Eugene D. GUTHRIE, Appellant,

v.

**SINCLAIR REFINING COMPANY,**
Appellee.

No. 13294.

Court of Civil Appeals of Texas. Houston.

Jan. 15, 1959.

Rehearing Denied Feb. 5, 1959.

———◆———

Mandell & Wright, Houston, Ben N. Ramey, Houston, of counsel, for appellant.

B. D. McKinney, Frank G. Harmon, Houston, Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellees.

WERLEIN, Justice.

■ Appellant, Eugene D. Guthrie, third engineer of the SS MacDonald, brought this suit under the Jones Act, 46 U.S.C.A. § 688 and for unseaworthiness against appellee, Sinclair Refining Company, to recover for personal injuries sustained by him about 2 o'clock a. m., July 26, 1955, when he stepped on a short length of line which lay on a lower deck level to which he had descended from the operating platform for the purpose of replacing a light bulb which had just burned out. The line was some 7 to 12 inches in length and about the size of an ordinary sash cord. It was located about 6 feet from the light bulb which had burned out and about 6 inches from the edge of the operating platform. Appellant testified that he could see the area of the lower deck where the line lay from the operating platform. Even after the light bulb burned out there was sufficient light to see the floor plates of the deck on which the line lay.

Unseaworthiness, as a ground of recovery, was not submitted to the jury, nor did appellant request submission of any issue or instructions thereon. The case was submitted under the Jones Act and the jury exonerated both appellant and appellee of negligence by finding unavoidable accident. The court rendered judgment on the verdict for appellee.

Appellant's first Point of Error is to the effect that the finding of the jury that the line in question was a proximate cause of injury to appellant required judgment for him on the ground of unseaworthiness.

The court gave the usual definition of "proximate cause", including the elements of foreseeability and reasonable anticipation.

Appellant argues that the jury, in finding that the line was a proximate cause of appellant's injury, in effect found that it could reasonably have been anticipated that someone would step on the line and be injured, and that, therefore, the part of the deck where the line lay was necessarily unseaworthy.

■ With this contention we do not agree. It seems evident that appellant is confusing his alleged two grounds of recovery. Negligence to be actionable must be a proximate cause of the injury. Anticipation and foreseeability are important considerations in determining liability for negligence. Seaworthiness vel non is not dependent upon either negligence or foreseeability. The fact that some small for-

eign substance on the deck proximately caused appellant to fall no more establishes unseaworthiness as a matter of law and in the absence of a jury finding, than does the finding of proximate cause establish common law liability without a finding of negligence. Unseaworthiness is essentially a species of liability without fault. A ship-owner's liability for unseaworthiness is absolute regardless of the presence or absence of negligence or proximate cause in the legal sense. Seas Shipping Company, Inc. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

It was not shown how the line got on the deck or how long it had been there. Appellant testified that he did not see it until after he had fallen. If the presence of a line 7 to 12 inches long and about the size of a sash cord or a pencil, as a matter of law, rendered that part of the deck unseaworthy where the line lay, then it would be our duty under decisions of the Supreme Court of the United States to reverse the case and render judgment for appellant for the sum of $2,378, representing $500 which the jury found for physical pain and suffering from the date of injury to the trial, and $1,878 which the jury found to be the reasonable cash value of the loss .to appellant, including meals and lodging and wages he reasonably would have earned from July 26, 1955, to October 13, 1955, but for the injury.

■ Ordinarily unseaworthiness allegedly arising from the presence of a transitory substance on a deck is a matter for the determination of the jury or court as a fact issue. Poignant v. United States, 2 Cir., 1955, 225 F.2d 595; Troupe v. Chicago, Duluth & Georgian Bay Transit Company, 2 Cir., 1956, 234 F.2d 253; Carter v. Schooner Pilgrim, Inc., 1 Cir., 1956, 238 F.2d 702. '

■ Appellant either abandoned unseaworthiness as an independent ground of recovery or else concluded that a finding by the jury that the line was a proximate cause of appellant's injury would, as a matter of law, establish unseaworthiness. We are of the opinion that by not requesting submission of an issue and instructions on unseaworthiness appellant has waived that ground of possible recovery in the same manner as the plaintiff waived such ground of recovery by not pleading it in the case of Keplinger v. American Mail Line, Ltd., D.C.W.D.Wash.1956, 11 A.M.C. 2318.

Some courts have denied liability in cases involving a transitory condition where the vessel or appliance is inherently sound and the danger has resulted from a foreign substance of a transitory nature. Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213; Shannon v. Union Barge Line, 3 Cir., 194 F.2d 584. In Daniels v. Pacific-Atlantic Steamship Co., D.C.E.D.N.Y.1954, 120 F. Supp. 96, 99, the Court stated:

"The weight of authority is that an injury caused by slipping on a spot of oil or other matter of a transitory nature in and of itself does not support a cause of action for damages for unseaworthiness."

See also McDonald v. Dingwall Shipping Company, D.C.S.D.Tex.1954, 135 F.Supp. 374, 376, in which the Court stated:

"The cases upon which the Libelant places principal reliance, Pope & Talbot, Inc., v. Hawn [346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143], supra; Seas Shipping Co. v. Sieracki, supra; Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, and others, show the relationships to which the unseaworthiness doctrine has been extended, but do not, in my opinion, apply the doctrine to a case where, as here, the vessel or the appliance in question is inherently sound and where the danger results from a foreign substance placed there by an undisclosed person an indeterminate time prior to the accident."

In Spero v. The Argodon, D.C.E.D.Va. 1957, 150 F.Supp. 1, 3, a third engineer slipped on oil on the floor of the engine

room and fell through a floor where a floorplate had been removed. Beyond question the removal of the floorplate was sufficient to constitute unseaworthiness in itself. The Court stated:

> "The presence of oil on the engine room floor would not, standing alone, be sufficient to impose liability for unseaworthiness under the facts of this particular case, but the combination of circumstances leads to the conclusion of liability."

Appellant contends, however, that in the case of Poignant v. United States, 2 Cir., 225 F.2d 595, 598, the Court reversed the decision of the trial court in dismissing the libel, alleging unseaworthiness causing injuries which resulted from slipping on an apple skin or some piece of garbage on the floor of a passageway on the vessel. In such case it was found that the vessel had no garbage disposal chutes, and the practice was at the conclusion of each meal to pull large cans of garbage from the galley over the passageway in question to the ship's rail for dumping overboard. It was not shown whether the apple skin had dropped out of one of the garbage cans or had been dropped otherwise. The court reversed the decision of the trial court and remanded the case for new trial, stating that it became necessary to consider *whether there was sufficient evidence on the issue of unseaworthiness to raise questions of fact which only the trial judge could resolve.* The Court further stated there was some testimony to support possible inferences (1) that the absence of garbage chutes on the vessel was the proximate cause of the accident, and (2) that comparable vessels generally are provided with such chutes. The Court stated, with reference to the standard required:

> "And so, we hold, although the owner is absolutely liable for failure to provide a vessel which measures up to the standard of the law, that standard is not perfection but reasonable fitness."

The instant case is readily distinguishable from the cases cited by appellant. In Petterson v. Alaska Steamship Company, 9 Cir., 1953, 205 F.2d 478, affirmed 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, a block broke while in ordinary use in the customary manner.

In Pacific Far East Lines v. Williams, 9 Cir., 1956, 234 F.2d 378, 379, certiorari denied 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed. 2d 76, there was frost on a hatch combing coupled with poor lighting.

In Carlisle Packing Company v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927, a can labelled "Kerosene" was filled with gasoline, thus unquestionably rendering the vessel unseaworthy. In some of the cases cited by appellant the vessel was unseaworthy, as a matter of law. In others the Court could decide as a question of fact.

In the instant case, we are in effect called upon to decide whether a piece of small line from 7 to 12 inches long rendered a vessel unseaworthy as a matter of law. We think at the very most only a fact issue was raised. We could no more hold as a matter of law that the presence of the short length of line rendered the vessel unseaworthy than we could hold as a matter of law that a spot of grease or oil, a piece of slippery paper, or an apple skin, rendered the vessel unseaworthy simply because it proximately caused a fall and injury. Appellant testified that the engine room was seaworthy as he understood the term. This of course did not foreclose his right to submit the issue to the jury for its determination.

By not requesting the submission of an issue for the determination of the jury on unseaworthiness, appellant waived such ground of recovery. He cannot now undertake to recover under a theory that he abandoned before the trial court charged the jury.

> "When the complaint is that the court has wholly failed to submit to the

jury the controlling issues necessary to establish an independent ground of recovery or of defense, the party relying upon such ground must request the submission of such omitted issues in substantially correct form, or he will waive the ground of recovery or defense." (3 McDonald, Texas Civil Practice 1148, Sec. 12.32.)

See also Rule 279, Texas Rules of Civil Procedure; 3–A Tex.Jur. 244, Appeal and Error, Sec. 188; and Ramm v. Ramm, Tex. Civ.App., 294 S.W.2d 174.

Appellant's second Point asserts the trial court erred in not submitting to the jury a charge containing issues, definitions and instructions making clear the federal law as to the distinction between the absolute and nondelegable duty of the employer and the duty of ordinary care imposed upon the employee.

 There can be no question that in cases brought under the Jones Act or the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the State court must follow the law as established by federal decisions. This is too clear for the citation of authorities. Appellant relies heavily on Thompson v. Gibson, Tex.Civ.App., Ft. Worth 1956, 290 S.W.2d 305, reversed and rendered by the Texas Supreme Court, 298 S.W.2d 97, reversed per curiam 355 U.S. 18, 78 S.Ct. 2, 3, 2 L.Ed.2d 1, order in compliance Tex., 310 S.W.2d 564. The jury found that the defendant was negligent in failing to use gravel of a uniform size and in failing to pack it between the railroad tracks and in failing to provide a smooth walkway for plaintiff. The United States Supreme Court, in reversing the Texas Supreme Court, which held there was no evidence of negligence, stated:

"We hold that the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury."

In the instant case the court submitted Special Issue No. 5, reading:

"Do you find that at, and immediately prior to, the time Eugene D. Guthrie suffered injury, if any, the presence of the line, if any, made that part of the deck where it lay not a reasonably safe place to work?"

to which the jury answered: "We do not."

In connection with Special Issue No. 5, the court gave the following definition:

"By the term 'reasonably safe place to work' is meant a place in which the work to be carried on can be done with reasonable safety."

We think this definition is correct and adequate.

 Appellant's requested Issue No. 15, which was refused, reads:

"Do you find from a preponderance of the evidence that Defendant failed to furnish to Eugene D. Guthrie, at the time and on the occasion of his injury, if any, a reasonably safe place in which to work?"

The only thing that could possibly have rendered the place not reasonably safe was the presence of the line in question. The court properly confined the Issue to whether the presence of the line made that part of the deck where it lay not reasonably safe. The instruction in connection with appellant's requested Issue was an instruction on law with which the jury were not concerned. Further, the instruction was not a correct statement of the law in that under the Jones Act there must be employer negligence to create liability for not providing a safe place to work.

In West v. United States, D.C.E.D.Pa. 1956, 143 F.Supp. 473, 480, the court stated:

"Unlike the distinct and sometime overlapping duty to provide a seaworthy vessel and appurtenances, a shipowner's duty to provide a safe place to work is not an absolute duty; rather, it is a requirement of reasonable care under the circumstances. Brabazon v. Belships Co., 3 Cir., 1953, 202

F.2d 904, 906. It is not a unique and separate ground of liability but rather liability predicated upon negligence. Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213, see opinion of Chief Judge Kirkpatrick, D.C.E.Pa., 1949, 87 F.Supp. 203, 205."

There was no evidence of inadequate lighting and no request for submission of an independent issue thereon or for its inclusion in the court's Issue No. 5. We think appellant's contention relative to his requested issue and instructions is without merit.

Appellant cites Cox v. Esso Shipping Company, 5 Cir., 247 F.2d 629, with reference to instructions that should be given a jury as to the duty of a shipowner in an action for unseaworthiness. In that case the court distinguished between the absolute duty to provide a seaworthy vessel and the standard of due care under the Jones Act. In the instant case no instruction was required in connection with seaworthiness since no issue was requested with respect thereto. Indeed, the instruction requested by appellant in connection with such issue was not necessary to enable the jury to properly pass upon and answer Issue No. 5 relative to a safe place to work and the giving of such instruction would have been improper and error. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481; Texas Bus Lines v. Whatley, Tex.Civ.App., 210 S.W.2d 626, ref. n. r. e.

■ The court refused appellant's requested Issue No 9, reading:

"Do you find from a preponderance of the evidence that the Defendant failed in its duty to inspect Eugene D. Guthrie's place of work?"

We think the court properly refused this Issue and the instruction in connection therewith. Appellant stood the 12 to 4 a. m. watch in the engine room where the injury occurred at 2 o'clock a. m. As third engineer on watch it was his responsibility, according to his testimony, to make inspections to determine the presence of gear adrift about the deck. He further testified that it had been his practice in making his inspections to pick up a thing like the line in question and to put it in a safe place, and that if he had seen it before the accident that's what he would have done, whether it was a part of his job or not.

Appellant contends that under the governing union contract, appellant was forbidden to do clean-up work. Under such contract appellant, as a licensed engineer, was *not required* to do clean-up work customarily assigned to unlicensed personnel, and usually done by wipers. As officer on watch, however, the responsibility of inspection was his. He had two unlicensed men on watch with him and as their senior it was his responsibility and duty to tell them to clean up any oil spills or pick up loose gear. The court submitted Special Issue No. 12 inquiring whether appellant failed to make a proper inspection of the area in question during the two hours he was on watch prior to his fall, and the jury answered in the negative. Since appellee's duty of making a proper inspection, though nondelegable, was reposed for the time in appellant, the jury's finding should be construed as exonerating appellee of any failure to make a proper inspection. Regardless of that, an inspection could only have disclosed the presence of the line which admittedly was on the deck but which the jury found did not render that part of the deck a place not reasonably safe to work. Further, there was no evidence that appellee had failed in its duty of inspection. Appellant testified that he was not saying that the people on watch before him were negligent in any way. There is no evidence that they were.

■ The court did not err in refusing to give Special Issue No. 12, requested by appellant, inquiring whether a fellow employee of Eugene D. Guthrie left the line on the deck where appellant suffered his injury. There is no evidence as to how the line got at the place in question or how

long it had been there. Appellant testified he did not know how it got there. He did state, however, that "they were painting in there. I do not know whether they were using it to tie a bucket, but I do not know. If we assume, however, that the jury might have drawn an inference from such negative testimony and have found that the line was left by a fellow employee, we are still confronted with the proposition that the submission would have been in effect a double submission. The court in its charge specifically inquired as to whether the presence of the line made the deck where it lay not a reasonably safe place to work, and the jury found that it did not. If, in addition to such issue, the jury was asked whether an employee left the line where it was and whether it was negligence to do so, the inquiry would have covered the same issue, or a phase or shade thereof. It was not the leaving of the line but its presence on the deck that might have threatened harm and made the place unsafe for work.

Moreover, the jury exonerated both appellant and appellee of all negligence in finding that the occurrence in question was the result of an unavoidable accident. The jury was instructed in connection with the submission of the issue as to whether the accident was or was not an unavoidable accident, that

"By the term 'unavoidable accident', as used herein, is meant the unforeseen and unanticipated happening of an event occurring without either the Defendant or the Plaintiff being guilty of negligence that proximately caused the accident in question, if any."

The finding of the jury negated negligence in all particulars.

■ Had there been alleged defects, other than the presence of the line in question, it would have been proper for the court to have submitted issues covering such other defects that might have made the deck an unsafe place to work. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99. Appellant, however, did not prove any defect allegedly making the deck unsafe, other than the presence of the line which was included in the issue answered by the jury adversely to appellant's contention. The ultimate issue given adequately covered the requested issue. Rule 279, Texas Rules of Civil Procedure; S. H. Kress & Co. v. Selph, Tex. Civ.App., 250 S.W.2d 883, ref., n. r. e.; Serna v. Cochrum, Tex.Civ.App., 290 S.W. 2d 383, ref., n. r. e.; Fullingim v. Dunaway, Tex.Civ.App., 267 S.W.2d 483, no writ history. The law is well settled that it is not necessary to submit a special issue covering an evidential or subordinate fact (in the instant case, how did the line get there or who left it?) which is necessarily embraced in the determination of the ultimate fact (did the presence of the line, regardless of how it got there, make that part of the deck where it lay not a reasonably safe place to work?). Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79. See McDonald, Texas Civil Practice, Sec. 12.09; Northeast Texas Motor Lines v. Hodges, Tex.Com.App., 138 Tex. 280, 158 S.W.2d 487, 489, in which the court stated:

"It has never been the policy of the law to lengthen and complicate special issue charges by requiring trial courts to give issues that merely submit various phases or other shades of meaning of an issue already in the charge. It is required only that each controlling issue raised by the pleadings and the evidence be submitted once, fairly, simply and succinctly. Otherwise, such charge could be drawn out to interminable length confusing not alone to the jury but to court and counsel as well."

We think the case was fairly and adequately submitted and that the jury's findings should stand.

The judgment of the trial court is affirmed.