Morris McALLISTER, Appellant,

v.

James E. GARDNER, dba Gardner Plumbing & Heating Company, Appellee.

No. 16248.

Court of Civil Appeals of Texas.

Dallas.

Nov. 8, 1963.

Rehearing Denied Dec. 13, 1963.

John D. Crawford, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

Edward E. Crowell, Jr., Leachman, Gardere, Akin, Porter & DeHay, Dallas, for appellee.

BATEMAN, Justice.

Appellant brought this tort action against appellee and appeals from a take-nothing judgment rendered upon a jury verdict. Appellant's house was seriously damaged by fire which he claimed to have been caused by the negligence of appellee, a plumber, who had been employed by appellant to repair a gas leak in appellant's yard. Finding no reversible error, we affirm the judgment.

The jury findings which are material to the problems raised by this appeal are: (1) appellee and his employees did not make proper repairs to the gas line; (2) this·

failure was a proximate cause of the fire; (3) the failure of appellee and his employees to pressure test the gas line was negligence, and (4) a proximate cause of the fire; (7) the failure of appellee and his employees to return to appellant's residence and make any additional repairs on the gas line was negligence, and (8) a proximate cause of the fire; (9) appellee and his employees did not discover any gas line leaks other than the one they repaired, (10) which failure was negligence, and (11) a proximate cause of the fire; (12) after the plumbing work in November 1960, appellant made no efforts to prevent an accumulation, if any, on his premises of leaking natural gas, if any, (13) which "failure" was negligence, and (14) a proximate cause; (15) appellant failed to inspect the gas line in his yard after the November 1960 plumbing work, but (15–A) that this was not negligence; (16) appellant did not make an inspection of the gas piping in his house before the fire, but (16–A) that this was not negligence; (17) after the November 1960 plumbing work appellant did not contact anyone who had worked on or inspected his gas service line to determine whether any further work should be done on it, (17–A) which was negligence, and (17–B) a proximate cause; (18) it was not an unavoidable accident; and (19) (20) (21) damages of $18,000.

### Facts

Seeing that a tree and a spot of grass in their yard were dying, appellant's wife obtained an inspection by a representative of the gas utility, who told her that there was a gas leak in the yard and advised her to call a plumber. She then called appellee who said he would have someone "run by and put a clamp on it." When appellant and his wife returned home the night of November 27, 1960, not having been there when appellee did his work, they observed that their yard had been dug into at the place where the dead grass was, and they assumed appellee had repaired the leak.

They did not thereafter smell any gas on the premises. Appellee dug a hole large enough to expose about one foot of the pipe and put an emergency clamp over the hole he found there. He testified that although it was a good practice to do so he did not check out more than the one spot or uncover other parts of the pipe to observe its condition; also that he had intended to talk to the owners about replacing the line, which would be in conformity to good practice, but that he did not do so. He did not leave appellant a note, or send him a statement for the work done, or have any further communication of any kind with him. Appellee admitted that an accumulation of gas, if it comes in contact with fire, will burn and that an electric spark would cause it to burn and that he was aware that such an event can occur in the ordinary use of a house. On December 28, 1960, 31 days after appellee's work was done, there was an explosion and fire resulting in extensive damage to appellant's house.

Neither appellant nor his wife called appellee again after the work was done on November 27, the wife's explanation for this being that "the holidays were coming up and I waited for a statement."

Harry A. Zetterlund, offered by appellant as an expert witness, qualified as a consulting engineer and testified that he investigated the gas line in appellant's yard on December 29, the day after the fire, and again on January 14, 1961. He had several sections of the gas pipe dug up and found numerous holes in addition to the one repaired by appellee. He expressed the opinion that these additional holes were present in the pipe at the time appellee did his work and that a pressure test would have disclosed them. He stated further that the pipe slanted upward toward the house and that in many instances escaping gas will follow the exterior of the pipe line until it can come up out of the ground. He expressed the further opinion that the gas, being about half as heavy as air, would

tend to rise; that since the weather reports indicated that just prior to the fire there was a drizzly condition and a very steady wind of nine miles per hour, it was his opinion that the heavy atmosphere would blanket and tend to hold the gas down and that these weather conditions in his opinion caused the atmosphere to create a blanket over and around the house and that the gas would find its way to the eaves cf the house which would tend to direct the gas into the attic through louvers, and that this accumulated gas was ignited by an electric spark from wires in the attic, causing an explosion of the gas followed by the fire. He said that in his investigation he did not determine what ignited the gas; also that it was possible that the gas had escaped from an appliance inside the house and gone up the wall into the attic. No gas leaks were found inside the house after the fire.

Several days before appellee did his work on November 27, 1960, a Mr. Girlinghouse, who lived next door, told either appellant or appellant's wife that he smelled gas. Appellant's wife testified that she did not smell any gas after appellee did his work but that her neighbor, Mrs. Girlinghouse, said that she thought that she still smelled gas after the work was done; that neither she nor her husband, appellant, smelled any gas in their yard but that they did not go around the area where the gas meter was because they assumed that it had been fixed. Appellant testified that a few days after appellee's men were out there his wife told him that someone detected the odor of gas on his premises or in his yard but that he did not do anything at all, did not call the gas company again and did not call appellee.

## Opinion

Appellant's first point of error on appeal is: "The Trial Court erred in not rendering judgment for Plaintiff based upon the following Special Issues and the jury's answers thereto: 1, 2, 3, 4, 7, 8, 9, 10, 11, 18, 19, 20 and 21, and in not disregarding Special Issues 12, 13, 14, 17, 17a and 17b." He argues thereunder that the findings of contributory negligence made in response to Special Issues Nos. 12, 13, 14, 17, 17a and 17b should be disregarded since there was no evidence to show that (a) he had or should have had any knowledge of an accumulation of gas on his premises, or (b) that he was under any duty to contact anyone to determine whether any further work should be done.

■ Only that part of the foregoing point of error which complains of the court's refusal to disregard the findings of contributory negligence is of importance here. Of course, the findings in response to Special Issues Nos. 1, 2, 3, 4, 7, 8, 9, 10, 11, 18, 19, 20 and 21 entitled appellant to his judgment, but those in response to Nos. 12, 13, 14, 17, 17a and 17b, being findings of contributory negligence, required judgment for appellee unless set aside or disregarded. The trial court's refusal to disregard them cannot be overturned here unless attacked by a point of error which is germane to one or more assignments of error. Rule 418, Vernon's Texas Rules of Civil Procedure.

We have scrutinized appellant's amended motion for new trial and find no assignment of error therein complaining of the court's refusal to disregard these findings. For this reason the point cannot be considered. Alamo Express, Inc. v. Wafer, Tex.Civ.App., 333 S.W.2d 651, no wr. hist.; De Busk v. Quest, Tex.Civ.App., 290 S.W. 2d 569, err. dism.

■ Moreover, had the matter been properly brought to our attention, we would be compelled to find that there was at least some evidence, more than a scintilla, as demonstrated above, to support the findings, and that they were unquestionably material. Therefore, in any event the point would have been overruled. Gulf, C. & S. F. Ry. Co., v. Deen, 158 Tex. 466, 312 S.W.2d 933; Burt v. Lochausen, 151 Tex. 289, 249 S.W. 2d 194.

By his second, third, fourth and fifth points of error, appellant complains of the submission of the contributory negligence issues and the rendition of judgment for the appellee because no inquiry was made of the jury by the submission of appropriate issue as to whether appellant had knowledge of an accumulation of gas on his premises. He cites Brownsville Navigation District v. Valley Ice & Fuel Co., 313 S.W.2d 104, no wr. hist., and numerous other cases to the effect that if a plaintiff is ignorant of a danger with which he comes in contact there is no duty on his part to exercise care to avoid such danger, and that "before an injured person can be charged with contributory negligence he must have had knowledge of the danger and appreciated the liability of injury incident to his conduct, or (that) by the exercise of ordinary care he should have known and appreciated the danger of the act." These authorities have no application here, because in this case the jury had before it evidence which they had a right to consider in support of the view that appellant either knew of the escaping gas after appellee's work was finished or by the exercise of ordinary care should have known of it.

The court was required and authorized to submit only controlling issues. Rule 279, Vernon's Texas R.C.P. In our opinion the issue suggested by appellant would have been only an evidentiary issue, and it has been held numerous times that it is not necessary to submit such evidentiary issues, as they may be embraced or grouped in an ultimate or controlling issue. Guthrie v. Sinclair Refining Co., 320 S.W.2d 396, certiorari denied, 361 U.S. 883, 80 S.Ct. 155, 4 L.Ed.2d 120, rehearing denied, 361 U.S. 941, 80 S.Ct. 366, 4 L.Ed.2d 361; Maryland Cas. Co. v. Smithson, 341 S.W.2d 951, err. ref. n.r.e. Even if it could be considered a proper issue, yet appellant did not request its submission and it must be deemed to have been found by the court in such manner as to support the judgment. Rule 279, Vernon's Texas R.C.P.

These four points are overruled.

In his sixth point of error appellant says that the trial court erred in submitting Special Issue No. 17, inquiring as to whether, after appellee's plumbing work was done, appellant contacted anyone who had worked on or inspected his gas service line, to determine whether any further work should be done on it, arguing that this was not a controlling issue but one that was evidentiary only. He argues that if he had contacted everyone who had anything to do with working on or inspecting the gas service line, and that even if further work were done in response to such contact, and the work was done as negligently as it was done in the first instance, the fire damage would still have occurred. We agree with appellant in this, and sustain the sixth point of error, because neither the jury nor we can assume the work would have been properly done had such contacts been made. However, this is not sufficient to require a reversal of the judgment because it leaves undisturbed the findings of the jury in answer to Special Issues Nos. 12, 13 and 14, in themselves competent to establish such contributory negligence as would deny appellant a recovery.

The seventh and eighth points complain that the court used the word "failure" in Special Issue No. 13, whereas in Special Issue No. 12 the inquiry was only as to whether appellant made no efforts to prevent an accumulation of gas on his premises. We consider this slight variation in wording to be immaterial and not calculated to mislead or confuse the jury or otherwise to be harmful to appellant. The points are overruled.

Under his ninth and tenth points appellant says that the answer to Special Issue No. 12 will not support the considera-

tion of Special Issues Nos. 13 or 14, arguing that Nos. 13 and 14 were submitted conditionally upon an affirmative answer to No. 12, and that, because of the use by the court of the "double negative" No. 12 was actually answered in the negative.

Special Issue No. 12 was as follows: "Do you find from a preponderance of the evidence that after the plumbing work in November 1960, Morris McAllister made no efforts to prevent an accumulation, if any, on his premises of leaking natural gas, if any? Answer 'He did not' or 'He did' ". The answer was, "He did not." Appellant says that this was tantamount to saying "he did not make no efforts," which is the same as saying that he did make efforts.

This rather tenuous exercise in semantics is interesting but we think its effect is to divert attention from, rather than direct it to, the real findings of the jury. The law does not require the courts to observe the most exquisite refinements of English grammar in submitting questions to the jury; it only requires that they be submitted in such plain language as to be easily understood by the jury. We think the issues quoted above meet that standard, and the ninth and tenth points are overruled.

▪ By his eleventh and twelfth points appellant contends that the jury's answers to Special Issues Nos. 13 and 17–A are in irreconcilable conflict with the response to Issue No. 15–A. The substance of these jury findings is set forth in the second paragraph of this opinion. Appellant argues that if his failure to inspect the gas line in his yard after appellee's work was done was not negligence, as found in answer to Special Issue No. 15–A, he could not very well have been negligent in failing to make any efforts to prevent an accumulation of gas in his attic, or in failing to

contact those who had inspected or worked on his gas line. We have already held that Special Issue No. 17 was evidentiary, making it unnecessary for us to further notice 17–A. With respect to the asserted conflict between Nos. 13 and 15–A we hold that, since a person under these circumstances could have been negligent in failing to take steps to prevent an accumulation of gas in his attic although not negligent in failing to inspect the gas line in his yard, the irreconcilable conflict asserted by appellant does not in fact exist. Points 11 and 12 are therefore overruled.

In his remaining eleven points (13 through 23) appellant says the court erred in submitting Special Issues Nos. 12, 13 and 14 because there was no evidence, and because there was insufficient evidence, to support them, and that the court erred in rendering judgment for appellee based on the findings made in response to Special Issues Nos. 12, 13, 14, 17–A and 17–B because such findings are each against the greater weight and preponderance of the evidence. We have carefully read and considered all of the evidence, including that in support of as well as that against the findings in question, and find it to be sufficient to warrant the submission of the issues and sufficient to support the jury findings in question. These points are also overruled.

Appellee presents eight cross-points for our consideration in the event the points urged by appellant be sustained. These cross-points assert that there was no evidence to support any of the jury findings of negligence and proximate cause relating to appellee's conduct. As the judgment is being affirmed, we do not deem it necessary to pass upon these cross-points.

Affirmed.